# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DAYINTA DYAH ANGGANA, Administrator of the Estate of NURUL DYAH AYU SITHARESMI, Deceased,<br><br>Plaintiff,<br><br>v.<br><br>THE BOEING COMPANY, a corporation,<br><br>Defendant. | No. 1:18-cv-08484 |

**DEFENDANT THE BOEING COMPANY'S ANSWER AND**
**AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT**

Defendant The Boeing Company ("Boeing"), by and through its attorneys of record, Perkins Coie LLP, hereby answers the Complaint at Law ("Complaint") of Plaintiff Dayinta Dyah Anggana, Administrator of the Estate of Nurul Dyah Ayu Sitharesmi, Deceased (collectively, "Plaintiff"), as follows, in paragraphs numbered to correspond to the paragraph numbers in said Complaint. All facts not specifically admitted are denied.

Boeing also states that the Complaint pertains to an accident on October 29, 2018, that currently is the subject of an ongoing investigation by the Indonesia National Transportation Safety Committee ("NTSC-KNKT"), which has not yet been completed. The United States National Transportation Safety Board ("NTSB") is a party to the NTSC-KNKT investigation, and Boeing is providing technical assistance.

Under international law (Section 5.26 of Annex 13 to the Convention on International Civil Aviation) and federal law (49 C.F.R. § 831.13 and 49 § U.S.C. 1114(f)), Boeing is prohibited at this time from releasing information concerning the accident to any person not a party to the investigation without prior consultation and approval of the NTSB. Accordingly, in responding to this Complaint, Boeing has not relied upon information made known to certain Boeing personnel by the NTSB related to the ongoing investigation of the accident.

ANSWER TO COMPLAINT

92130173.3

## THE PARTIES

1. At all times herein mentioned, the decedent Nurul Dyah Ayu Sitharesmi was an individual residing in Indonesia.

**ANSWER:**

Boeing admits, upon information and belief, that the decedent was an individual residing in Indonesia at all times relevant herein.

2. At all times herein mentioned, Plaintiff DAYINTA DYAH ANGGANA was and is an individual residing in Indonesia.

**ANSWER:**

Upon information and belief, Plaintiff was and continues to be a resident of Indonesia.

3. At all times herein mentioned, Defendant The Boeing Company was and is a corporation organized under the laws of Delaware with its worldwide headquarters and principal place of business in Chicago, Illinois.

**ANSWER:**

Boeing admits the allegations contained in Paragraph 3.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the entire action by virtue of the fact that this is a civil action wherein the matter in controversy, exclusive of interest and costs, exceeds the jurisdictional minimum of this Court. Additionally, this Court has specific jurisdiction over this action by virtue of the fact that Defendant Boeing's worldwide headquarters and principal place of business is in Chicago, Illinois.

**ANSWER:**

The allegations contained in Paragraph 4 consist of legal conclusions to which no response from Boeing is required; to the extent a response is required, Boeing responds that it has properly removed this case to this Court from the Circuit Court of Cook County, Illinois.

5. Venue is proper in this county pursuant to section 5/2-101 of the Illinois Code of Civil Procedure because Defendant Boeing resides in this county, is authorized to transact business in this county and is doing business in this county.

**ANSWER:**

The allegations contained in Paragraph 5 consist of legal conclusions to which no response from Boeing is required; to the extent a response is required, Boeing responds that it has properly removed this case to this Court from the Circuit Court of Cook County, Illinois.

6. To the extent applicable, Plaintiff elects to pursue all maritime claims in this Court under the Savings-to-Suitors Clause, 28 U.S.C. § 1333(1).

**ANSWER:**

The allegations contained in Paragraph 6 consist of legal conclusions to which no response from Boeing is required; to the extent a response is required, Boeing responds that it has properly removed this case to this Court from the Circuit Court of Cook County, Illinois.

## GENERAL ALLEGATIONS

7. The 737 MAX 8 is the newest generation of Boeing's 737 series of aircraft.

**ANSWER:**

Boeing denies the allegations contained in Paragraph 7.

8. At all relevant times herein, Boeing manufactured the 737 MAX 8 model aircraft in the United States.

**ANSWER:**

Boeing admits that final assembly of 737-8 model aircraft occurred in the United States, during the time up to and including the date of the accident at issue in this litigation. Boeing denies the remaining allegations contained in Paragraph 8 as written because some components, parts, and systems of the 737-8 model aircraft were manufactured either by Boeing outside the United States or by others.

9. In or around August 2018, Boeing delivered a newly manufactured 737 MAX 8 aircraft with tail number "PK-LQP" (the "subject aircraft") to Lion Air in Indonesia.

**ANSWER:**

Boeing admits that it delivered the Boeing 737-8 aircraft bearing Registration No. PK-LQP (the "Subject Aircraft") in August 2018, which bears Registration No. PK-LQP, in August 2018, and that Lion Air was its first operator. Boeing denies the remaining allegations contained in Paragraph 9.

10. Prior to October 29, 2018, Defendant Boeing designed, manufactured, assembled and sold the subject aircraft and prepared, published, and provided to Lion Air information including, but not limited to, a 737 MAX 8 flight operations manual ("FOM") regarding the operation of the subject aircraft.

**ANSWER:**

Boeing admits that, prior to October 29, 2018, it designed, manufactured, assembled, and sold the Subject Aircraft, except for those components, parts, and systems of the Subject Aircraft that were designed, manufactured, assembled, and sold by others, and the components, parts, and systems that were subsequently removed, installed, exchanged, altered, modified, retrofitted, overhauled, or manufactured by others. Boeing also admits that it provided Lion Air a copy of a Flight Crew Operations Manual ("FCOM") for the Subject Aircraft. Boeing denies the remaining allegations contained in this paragraph as written.

11. At the time the subject aircraft and its FOM left the custody and control of Defendant Boeing, they were defective and unreasonably dangerous in one or more of the following respects, among other defects:

    a. The subject aircraft's defective anti-stall system, the maneuvering characteristics augmentation system (MCAS), caused the aircraft's nose to suddenly, without warning, drop and dive steeply, and said event could occur even while under manual control when a pilot would not reasonably expect a flight computer to override one's actions;

    b. The scenario described in (a) above was not covered in the defective FOM, and Defendant Boeing did not disclose the foregoing or how to recover the plane from the foregoing to Lion Air pilots when Lion Air purchased the subject aircraft;

    c. The subject aircraft received "erroneous input" from one its defective angle of attack ("AOA") sensors;

    d. The scenario described in (c) above was not covered in the defective FOM, and Defendant Boeing did not disclose how to recover the plane from the foregoing to Lion Air pilots when Lion Air purchased the subject aircraft;

    e. The subject aircraft and FOM lacked proper and adequate instructions and warnings regarding the design and functions of its MCAS system; and

    f. The subject aircraft and FOM lacked proper and adequate instructions and warnings regarding how to correct a malfunctioning MCAS system.

**ANSWER:**

Boeing denies the allegations contained in Paragraph 11, including all sub-parts of Paragraph 11.

12. On or about October 29, 2018, Nurul Dyah Ayu Sitharesmi, was a passenger on board the subject aircraft operated by Lion Air as Flight JT 610. The flight was scheduled to depart from Jakarta to Pangkal Pinang, a provincial capital of a small island in the Java Sea.

ANSWER TO COMPLAINT

**ANSWER:**

Boeing admits that, on October 29, 2018, the Subject Aircraft, operated by Lion Air as Lion Air Flight JT 610, was scheduled to depart from Jakarta and arrive in Pangkal Pinang. Boeing lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 12 and therefore denies them.

13. On the morning of Monday, October 29, 2018, the subject aircraft departed from Jakarta's Soekarno – Hatta International Airport at or around 6:21 a.m. Shortly after takeoff, the crew contacted air traffic controllers and requested a return to Jakarta.

**ANSWER:**

Boeing admits that, on October 29, 2018, the Subject Aircraft departed from Jakarta's Soekarno – Hatta International Airport at or around 6:21 a.m. Boeing lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 13 and therefore denies them.

14. The subject aircraft received authorization to return, but it did not manage a turnaround. Witnesses saw the subject aircraft banking left, making significant altitude shifts, and then dropping sharply. According to data from flight radars, the plane was at an altitude of about 5,000 feet when its final descent began. The subject aircraft plummeted into the sea and disintegrated upon impact. The crew and passengers would have suffered unspeakable horror, pain, terror and injury as they plummeted to their deaths.

**ANSWER:**

Boeing admits that the Subject Aircraft crashed in the Java Sea off of the coast of Indonesia on October 29, 2018. Boeing lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 14 and therefore denies them.

15. Since the crash, on November 7, 2018, the Federal Aviation Authority (FAA) sent an emergency directive to all MAX 8 operators which detailed that pilots can stop a malfunctioning MCAS on those planes by merely pressing two buttons. The bulletin further details: "This condition, if not addressed, could cause the flight crew to have difficulty controlling the airplane, and lead to excessive nose-down attitude, significant altitude loss, and possible impact with terrain."[1]

---

[1] https:/ /www.cnn.com/2018/11/ 8/americas/lion-air-boeing-safety-intl/index.html

ANSWER TO COMPLAINT

92130173.3

**ANSWER:**

Boeing admits that Federal Aviation Authority Emergency Airworthiness Directive 2018-23-51, which was issued on November 7, 2018. The contents of that document speaks for themselves. Boeing further admits that pilots have various means available to respond to stabilizer movement commanded by the MCAS control law, but denies the remaining allegations contained in Paragraph 15 as written.

16. As a direct and proximate result of one or more of the above-described defective and dangerous conditions in the subject aircraft which caused it to crash into the sea as described above, Plaintiff has suffered injuries in the form of unspeakable pain, suffering, loss of companionship, and loss of earnings and support, among other damages.

**ANSWER:**

Boeing denies the allegations contained in Paragraph 16.

**COUNT I**
**STRICT PRODUCTS LIABILITY**
**(Pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/1, et seq.)**

17. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

**ANSWER:**

Boeing incorporates herein by reference its responses to Paragraphs 1-16, *supra*, as if set forth fully herein.

18. At all times herein mentioned, Defendant Boeing did design, manufacture, assemble, inspect, repair, endorse, draft, test, franchise, market, promote, advertise, supply, lease, distribute, and place into the stream of commerce the subject aircraft and FOM.

**ANSWER:**

Boeing admits that it designed, manufactured, assembled, inspected, tested, marketed, sold, and delivered the Subject Aircraft, except for those components, parts, and systems of the Subject Aircraft that were designed, manufactured, assembled, inspected, tested, marketed, sold, and delivered by others, and the components, parts, and systems that were subsequently removed, installed, exchanged, altered, modified, retrofitted, overhauled, or manufactured by others. Boeing also admits that it provided Lion Air a copy of a Flight Crew Operations Manual

ANSWER TO COMPLAINT

("FCOM") for the Subject Aircraft. Boeing denies the remaining allegations contained in this paragraph as written.

19. At the time the subject aircraft and FOM left the hands of Defendant Boeing, the subject aircraft, FOM, and the components alleged above, were defective and unsafe in manufacture, design and warnings.

**ANSWER:**

Boeing denies the allegations contained in Paragraph 19.

20. On or about October 29, 2018, Lion Air and its officers, directors, employees, and/or agents and decedent Nurul Dyah Ayu Sitharesmi were using the subject aircraft and FOM in a reasonable and foreseeable manner. Lion Air and its officers, directors, employees, and/or agents and decedent Nurul Dyah Ayu Sitharesmi were unaware that said products were unsafe for their intended use. The defective and unsafe conditions of aforesaid products caused the subject aircraft to plummet into an uncontrollable nosedive and crash into the sea. The decedent Nurul Dyah Ayu Sitharesmi was killed as a direct and legal result of the defective and unsafe conditions of said products and the component parts thereof.

**ANSWER:**

Boeing denies the allegations contained in Paragraph 20.

21. Defendant Boeing knew or should have known of the defects in the design and manufacture of the aforesaid products, which constitutes a hazard for those coming into contact with the aforesaid products and the component parts, and Defendant Boeing failed to notify, warn, and protect those coming into contact with the aforesaid products of the MCAS system, and such failure to warn was one of the legal causes of the incident and death of Nurul Dyah Ayu Sitharesmi.

**ANSWER:**

Boeing denies the allegations contained in Paragraph 21.

22. The aforesaid products failed to perform as safely as an ordinary consumer would have expected when the subject aircraft plummeted into an uncontrollable nose dive and crashed into the sea.

**ANSWER:**

Boeing denies the allegations contained in Paragraph 22.

23. As a direct and legal result of the acts and omissions of Defendant Boeing, Plaintiff has been deprived of the love, care, society, comfort, assistance, protection, affection, companionship, guidance, solace, services and support of said decedent, and has thereby sustained, and will continue to sustain, pecuniary loss in a sum as yet unascertained.

**ANSWER:**

Boeing denies the allegations contained in Paragraph 23.

ANSWER TO COMPLAINT

WHEREFORE, Plaintiff requests that this Court grant judgment in its favor and against Defendant on Count I and award Plaintiff the following relief:

(1) Award Plaintiff all damages available under the law in an amount to be determined at trial;
(2) Award Plaintiff interest in an amount to be determined by the Court;
(3) Award Plaintiff court costs in an amount to be determined by the Court; and
(4) Grant such other relief as this Court deems appropriate and just.

**ANSWER:**

Boeing denies that Plaintiff is entitled to any relief from Boeing.

## COUNT II
## NEGLIGENT PRODUCTS LIABILITY
### (Pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/1, et seq.)

24. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

**ANSWER:**

Boeing incorporates herein by reference its responses to Paragraphs 1-23, *supra*, as if set forth fully herein.

25. At all times herein mentioned, Defendant Boeing so negligently, carelessly, recklessly, and with gross negligence, designed, manufactured, assembled, inspected, repaired, maintained, endorsed, drafted, tested, franchised, supplied, sold, leased, distributed, and placed into the stream of commercial the subject aircraft and FOM, and negligently failed to warn relative to the said products and the components alleged above, and otherwise so negligently conducted itself, so as to directly and legally cause the injuries and damages described herein to Plaintiff.

**ANSWER:**

Boeing denies the allegations contained in Paragraph 25.

26. At all times herein mentioned, Defendant Boeing knew, or in the exercise of reasonable care should have known, that the subject aircraft, the FOM and the components alleged above, were defectively and negligently manufactured, designed, assembled, tested, inspected, fabricated, constructed, distributed, marketed and sold. Defendant Boeing failed to take reasonable steps to avoid exposing consumers, including Plaintiff's decedent, Nurul Dyah Ayu Sitharesmi, to the dangerous condition of such products, failed to disclose the products' known defects, failed to warn, failed to recall, failed to provide or send subsequent warnings after distribution to consumers, failed to warn Lion Air of the MCAS system, and otherwise so negligently conducted itself, so as to directly and legally cause the injuries and damages described herein to .

**ANSWER:**

Boeing denies the allegations contained in Paragraph 26.

ANSWER TO COMPLAINT

-8-

27. On or about October 29, 2018, Lion Air and its officers, directors, employees, and/or agents and decedent Nurul Dyah Ayu Sitharesmi were using the subject aircraft and FOM in a reasonable and foreseeable manner. Lion Air and its officers, directors, employees, and/or agents and decedent Nurul Dyah Ayu Sitharesmi were unaware that said products were unsafe for their intended use. The defective and unsafe conditions of the foregoing products caused the subject aircraft to fall into an uncontrollable nosedive and crash into the sea. The decedent Nurul Dyah Ayu Sitharesmi was killed as a result of the defective nature of the subject aircraft and FOM.

**ANSWER:**

Boeing denies the allegations contained in Paragraph 27.

28. Defendant Boeing had a duty, as a designer and manufacturer of goods, to manufacture, design, inspect and test the subject aircraft and FOM to ensure they were safe for use by ordinary consumers.

**ANSWER:**

The allegations contained in Paragraph 28 consist of legal conclusions to which no response from Boeing is required; to the extent a response is required, Boeing denies these allegations as written.

29. From the time the subject aircraft and FOM were delivered to Lion Air to the time of the crash, the aforesaid products were only used for their intended purpose and were not modified, upgraded, altered, damaged, or substantially changed in any way.

**ANSWER:**

Boeing lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 29 and therefore denies them.

30. As a direct and legal result of the acts and omissions of Defendant Boeing, Plaintiff has been deprived of the love, care, society, comfort, assistance, protection, affection, companionship, guidance, solace, services, and support of said decedent, and has thereby sustained, and will continue to sustain pecuniary loss in a sum as yet unascertained.

**ANSWER:**

Boeing denies the allegations contained in Paragraph 30.

WHEREFORE, Plaintiff requests that this Court grant judgment in its favor and against Defendant on Count II and award Plaintiff the following relief:
(1) Award Plaintiff all damages available under the law in an amount to be determined at trial;
(2) Award Plaintiff interest in an amount to be determined by the Court;
(3) Award Plaintiff court costs in an amount to be determined by the Court; and
(4) Grant such other relief as this Court deems appropriate and just.

ANSWER TO COMPLAINT

92130173.3

**ANSWER:**

Boeing denies that Plaintiff is entitled to any relief from Boeing.

### AFFIRMATIVE AND ADDITIONAL DEFENSES

#### FIRST DEFENSE

1. The Complaint and all claims for relief therein should be dismissed on the ground of *forum non conveniens*.

#### SECOND DEFENSE

2. Plaintiff's damages, if any, were proximately caused by the acts or omissions of others over whom Boeing had no control or right of control, and/or said acts or omissions were a superseding and sole, direct, and proximate cause of Plaintiff's damages, if any.

#### THIRD DEFENSE

3. If Plaintiff was damaged by products originally designed, manufactured, assembled, inspected, tested, or sold by Boeing, those products were subsequently installed, removed, exchanged, altered, modified, retrofitted, repaired, overhauled, remanufactured, improperly maintained, or misused by persons and/or entities other than Boeing, and over whom Boeing had no control or right of control, and such installation, removal, change, alteration, repair, modification, retrofitting, overhauling, remanufacturing, improper maintenance, or misuse proximately caused or contributed to the events alleged in the Complaint and the resulting damages complained of, if any.

#### FOURTH DEFENSE

4. Third parties over whom Boeing had no control altered and/or misused the Subject Aircraft, which was the sole, direct, and proximate cause of the damages, if any, of Plaintiff.

#### FIFTH DEFENSE

5. Boeing places in issue the negligence, fault, and responsibility of all persons and entities that have contributed in any degree to the injuries and damages alleged to have been

sustained by Plaintiff. Judgment against Boeing, if any, should be diminished to an amount that represents Boeing's degree of negligence, fault, or responsibility, if any.

## SIXTH DEFENSE

6. Plaintiff's claims may be barred by virtue of failing to properly identify the plaintiff personal representative.

## SEVENTH DEFENSE

7. The Subject Aircraft was intended for and sold to a knowledgeable and sophisticated user over whom Boeing had no control.

## EIGHTH DEFENSE

8. The Subject Aircraft was certified as airworthy by the Federal Aviation Administration, and the Subject Aircraft and its manuals, instructions, warnings, and other related documents complied with all applicable codes, standards, and regulations of the United States and agencies thereof at the time it was delivered by Boeing.

## NINTH DEFENSE

9. Boeing complied with all applicable federal, state, and foreign statutes, codes, and administrative regulations existing at the time the Subject Aircraft was manufactured and all applicable standards for design, inspection, testing, warning and manufacture.

## TENTH DEFENSE

10. The design of the Subject Aircraft and each component thereof that was installed at the time of delivery by Boeing was consistent with or exceeded the "state of the art" at the time of its design and manufacture. No technology was reasonably available or known to Boeing or anyone else in the industry to improve the safety of the Subject Aircraft or its parts.

## ELEVENTH DEFENSE

11. The benefits of the design of the Subject Aircraft and each component thereof outweigh the risks associated therewith, if any.

ANSWER TO COMPLAINT

92130173.3

## TWELFTH DEFENSE

12. The Complaint and all claims for relief therein should be dismissed on the ground that Plaintiff has failed to join necessary and indispensable parties.

## THIRTEENTH DEFENSE

13. Plaintiff may lack standing to bring this action.

## FOURTEENTH DEFENSE

14. An award or judgment rendered in favor of Plaintiff must be reduced by the amount of benefits Plaintiff received, or is entitled to receive, from any source as a result of this accident.

## FIFTEENTH DEFENSE

15. Some or all of Plaintiff's claims and available damages may be barred by virtue of prior settlements.

## SIXTEENTH DEFENSE

16. Plaintiff's claims may be barred in whole or in part and/or preempted by federal law.

## SEVENTEENTH DEFENSE

17. Evidence of subsequent remedial measures is not admissible to prove liability. *See* Federal Rule of Evidence 407.

## EIGHTEENTH DEFENSE

18. Plaintiff's Complaint is premature in that it was filed and served before the completion of the investigations arising from the October 29, 2018 accident at issue, including the ongoing investigation of the Indonesia National Transportation Safety Committee. Boeing reserves the right to add those affirmative defenses that it deems necessary to its defense during or upon the conclusion of investigation and discovery. Boeing further reserves the right to assert any additional affirmative defenses asserted by another defendant and/or allowed by the law of the jurisdiction found to apply in this case.

## NOTICE OF THE APPLICABILITY OF THE LAW OF ANOTHER JURISDICTION

Pursuant to Federal Rule of Civil Procedure 44.1, Boeing gives notice that it may raise issues concerning the applicability of the law of another jurisdiction, including but not limited to the laws of other states and/or a foreign country or countries, and reserves the right to assert and plead such other claims and defenses available to it arising out of the application of the substantive laws of another jurisdiction.

## PRAYER FOR RELIEF & DEMAND FOR JUDGMENT

WHEREFORE, Defendant The Boeing Company prays as follows:

That Plaintiff takes nothing by the Complaint, that the Complaint be dismissed, and that judgment on the Complaint be entered for Boeing;

That Boeing be awarded its costs of suit and attorneys' fees;

That the Court grant such further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Defendant The Boeing Company hereby demands trial by jury on all claims and defenses before the Court in this litigation.

DATED: January 2, 2019               THE BOEING COMPANY

                                     By: /s/ Gretchen M. Paine
                                        *One of its Attorneys*

Bates McIntyre Larson
BLarson@perkinscoie.com
Daniel T. Burley
DBurley@perkinscoie.com
**Perkins Coie LLP**
131 S. Dearborn, Suite 1700
Chicago, Illinois 60603-5559
Phone: (312) 324-8400
Fax: (312) 324-9400

Mack H. Shultz
MShultz@perkinscoie.com
Gretchen M. Paine
GPaine@perkinscoie.com

ANSWER TO COMPLAINT

-13-

92130173.3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: (206) 359-8000
Fax: (206) 359-9000

ANSWER TO COMPLAINT

92130173.3

## CERTIFICATE OF SERVICE

I, Gretchen M. Paine, certify that on January 2, 2019, I electronically filed the foregoing ***ANSWER TO PLAINTIFF'S COMPLAINT*** with the Clerk of the Court using the CM/ECF system, and served copies by email and by First-Class U.S. Mail, postage prepaid, upon the following attorneys of record:

Steven A. Hart
shart@hmelegal.com
HART McLAUGHLIN & ELDRIDGE
22 West Washington Street Suite 1600
Chicago, IL 60602
Phone: (312) 955-0545
Fax: (312) 971-9243

Sanjiv N. Singh
ssingh@sanjivnsingh.com
SANJIV N. SINGH, APLC
1650 S. Amphlett Blvd. Suite 220
San Mateo, CA 94402
Phone: (650) 389-2255
Fax: (415) 358-4006

Brian S. Kabateck
bsk@kbklawyers.com
Christopher B. Noyes
cn@kbklawyers.com
KABATECK LLP
633 West 5th Street, Suite 3200
Los Angeles, CA 90071
Phone: (213) 217-5000
Fax: (213) 217-5010

I certify under penalty of perjury that the foregoing is true and correct.

DATED this 2nd day of January, 2019.

    /s/ Gretchen M. Paine
PERKINS COIE LLP
1201 Third Ave., Suite 4900
Seattle, WA 98101
Tel: (206) 359-8000
Fax: (206) 359-9000